IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

CHARLOTTE CLEMENT,

    Plaintiff,

vs.                              CASE NO. CV-01-J-2813-NW

THE GADSDEN TREATMENT CENTER,
d/b/a SHOALS TREATMENT CENTER,

    Defendant.

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 7), and brief in support thereof ("brief in support"), to which the plaintiff submitted a brief in opposition ("plaintiff's opposition"). Both parties have filed evidentiary submissions in support of their respective positions. The court has reviewed the motion, the memoranda of law and the evidentiary submissions of the parties.

### I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant has violated Title VII by retaliating against her for complaining about sexual harassment by Jerry Wright, her supervisor, as well as allowing the sexual harassment to occur. The plaintiff also brought state law claims for outrage, assault and battery and invasion of privacy. The plaintiff had named Wright in her complaint, but has since informed the court that she has settled her claims against Wright and he has been dismissed from this litigation (doc. 11).



## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows: The plaintiff began working as a counselor for defendant, a methadone treatment center, in March, 1998. Plaintiff depo. at 22, 31. Sometime during the year 2000, plaintiff began to feel uncomfortable around Jerry Wright, the executive director. *Id.* at 44, 49; Privett depo. at 6. He asked her inappropriate questions, touched her inappropriately and bought her a gift. Plaintiff depo. at 66-67, 70-71, 76, 90-91, 93, 103-106.

Plaintiff eventually went to Gerald Privett, the clinical director and told him she could not take Wright's advances any longer. Plaintiff depo. at 46; Privett depo. at 5, 7. The plaintiff put her complaints in writing on November 15, 2000.[1] Plaintiff depo. at 46-48; defendant's exhibit 6 to plaintiff depo.; Privett depo. at 10. The defendant had no sexual harassment policy. Plaintiff depo. at 127; Privett depo. at 12, 72; Batson depo. at 6.[2] The parties do not dispute that Wright's behavior was inappropriate. The day after Privett received plaintiff's written statement, a board meeting was held and Wright was told to stop his offensive behavior. Privett depo. at 19-20. The plaintiff testified she had no further problems with Wright, except that she was excluded by him. Plaintiff depo. at 115-116, 140.

Wright was terminated in February or March, 2001, for unrelated reasons (allegations of embezzlement). Plaintiff depo. at 115, Privett depo. at 56-57. The plaintiff was demoted

---

[1] Privett asserts he told the plaintiff to put her complaints in writing after asking a friend of his who manages a Waffle House how to handle the situation. Privett depo. at 71-72. Plaintiff refutes that Privett told her to write down her complaints.

[2] John Batson is the owner and president of the defendant corporation. Batson depo. at 4.

2

in March, 2001 from head counselor to a staff counselor position. Plaintiff depo. at 128, Privett depo. at 44. The plaintiff was then terminated in May, 2001. Plaintiff depo. at 124, Privett depo. at 46-47.

Between the time the plaintiff complained in November, 2000 and her termination in May, 2001, in addition to being demoted, the plaintiff's work performance was criticized, she was written up for being late, chastised for taking a day off work to get married (albeit without permission) and ridiculed by other employees. Defendant asserts the plaintiff was terminated for being late to work, not properly documenting meetings or files, not performing her job duties, and inappropriate sexual behavior.[3] Privett depo. at 25, 33-34, 47, 51-52; Batson depo. at 21. The plaintiff was not told these reasons. Privett depo. at 55. However, she refutes being chronically late, states preapproval of absences was not required, and that she was just as qualified for her job as when she was promoted to it. Plaintiff depo. at 32, 34, 40, 117-118, 121-124, 141-143. The parties do not dispute that the defendant had no knowledge of the allegedly inappropriate behavior at the time the plaintiff was terminated.

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3]Kim Brazier, another employee who complained that Wright was sexually harassing her, was also terminated. Privett depo. at 17, 32; Batson depo. at 24.

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI*

4

*Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

## IV. Discussion

### A. Title VII Sexual Harassment

The plaintiff states a claim for sexual harassment under Title VII. The court finds that once the plaintiff complained about the harassment, her employer took immediate action and the harassment stopped November 16, 2000. The plaintiff filed her EEOC charge of May 31, 2001, more than 180 days later. The plaintiff argues that the court should apply equitable tolling as the plaintiff had no notice of her rights under Title VII due to the defendant's failure to post the same or have a policy. However, even if the plaintiff could show an unlawful act within 180 days prior to filing her charge with the EEOC, or the court applied equitable tolling, she can show no basis to hold the defendant liable for Wright's actions.

To establish a prima facie claim of sexual harassment, the plaintiff must show: 1) she belongs to a protected group; 2) she was subject to unwelcome harassment; 3) the harassment was based on her sex; 4) the harassment was severe or pervasive enough to alter the terms and conditions of employment; and 5) a basis to hold the employer liable. *Mendoza v. Borden*, 195 F.3d 1238, 1245 (11th Cir.1999).

In the facts before this court, the fourth and fifth elements of the plaintiff's claim are missing. The plaintiff cannot show that the harassment itself was severe or pervasive enough to alter her working environment. Rather, she was asked some personal questions (plaintiff depo. at 62-63); bought a gift (plaintiff depo. at 52-53); had dinner with Wright (plaintiff

5

depo. at 58); given compliments (plaintiff depo. at 60); and heard inappropriate comments (plaintiff depo. at 71).

Where no policy on preventing harassment exists, the defendant is only liable for conduct that is so severe or pervasive as to confer constructive knowledge on the employer. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1279 (11th Cir. 2002). The conduct alleged simply does not rise to such a level. Furthermore, when the plaintiff went to Privett with a written statement describing Wright's inappropriate behavior, the defendant took immediate action to stop any further harassment from occurring.

### B. Retaliation

Six months after the plaintiff complained about the harassment, she was terminated. Between the time she complained and her termination, the plaintiff was written up and demoted. To establish a prima facie case of retaliation, the plaintiff must prove: 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) the adverse action was causally related to the protected activity. *Williams v. Motorola*, – F.3d – , 2002 WL 1987650 (11th Cir. Aug. 29, 2002) at *4. The plaintiff meets this standard. After the plaintiff complained of being sexually harassed by Wright, defendant found fault with her work, found her unqualified for the job she was already performing, asserted she was excessively tardy, and accused her of engaging in inappropriate work behavior.[4]

---

[4]The defendant notified the EEOC that plaintiff was terminated for immoral or indecent conduct. Defendant's responses to plaintiff's interrogatories at 3. Defendant admits it had no knowledge of the facts forming the basis of this allegation until after the plaintiff was terminated and it was interviewing employees in response to plaintiff's EEOC charge. *See also* Privett depo. at 41-43, 54, 64; Batson depo. at 33.

The court finds that the facts of this case are sufficient to allow the plaintiff to present her claim for retaliation to a jury. The plaintiff has submitted sufficient evidence "to permit a reasonable fact finder to conclude the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997); citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 & n. 10, 101 S.Ct. 1089, 1094-1095 & n. 10 (1981).

### C. State Law Claims

The plaintiff concedes her state law claim for outrage is due to be dismissed and the court shall dismiss said count of the complaint. *See* plaintiff's opposition at 11. The plaintiff also asserts claims for assault and battery and invasion of privacy against her employer. For the defendant to be held liable for the intentional torts of Wright, the plaintiff must show that (1) the wrongful acts were committed "in the line and scope of employment"; *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 326 (Ala.1989), citing *Jessup v. Shaddix*, 275 Ala.281, 154 So.2d 39 (1963); or (2) that the acts were committed in furtherance of defendant's business, *Solmica of the Gulf Coast, Inc. v. Braggs*, 285 Ala. 396, 232 So.2d 638 (Ala.1970); or (3) that defendant participated in, authorized or ratified the wrongful acts; *Joyner v. AAA Cooper Transportation*, 477 So.2d 364, 365 (Ala.1985). *See Mardis v. Robbins Tire and Rubber Co.*, 669 So.2d 885, 889 (Ala.1995); *Potts v. BE & K Construction Co.*, 604 So.2d 398, 400 (Ala.1992). The determination of whether the conduct is within the line and scope of the employment depends upon the service in which the employee is engaged. *Doe v. Swift*, 570 So.2d 1209, 1211 (Ala.1990) ("the conduct of the employee ...

7

must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment").

In *Doe*, the Alabama Supreme Court stated that sexual misconduct, including assault and battery by an employee, is purely personal and outside the line and scope of his employment. *Doe*, 570 So.2d at 1211. *See also Busby*, 551 So.2d at 327 ("Here, Deaton's conduct was aimed purely at satisfying his own lustful desires; no corporate purpose could conceivably be served by his overtures. The plaintiff's ... complaints were sufficient to notify [her employer] that something was wrong, but not that Deaton's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society").

The plaintiff argues that defendant "ratified" the acts of Wright. To show that defendant authorized or participated in Wright's acts or ratified his conduct, the plaintiff must show that defendant (1) had actual knowledge of Wright's allegedly tortious conduct and that the tortious conduct was directed at and visited upon the plaintiff; (2) that based upon this knowledge, defendant knew, or should have known, that such conduct constituted a tort; and (3) that defendant failed to take adequate steps to remedy the situation. *Mardis*, 669 So.2d at 889; citing *Potts v. BE & K Construction Co.*, 604 So.2d at 400.

The plaintiff is unable to show any ratification or even knowledge on the part of defendant of Wright's behavior on or before the date she notified Privett of Wright's behavior. This, by plaintiff's testimony, was approximately two weeks before the plaintiff submitted her written notice of her complaints about Wright. Plaintiff agrees that upon her

8

providing written allegations of her complaints to Privett, the offensive conduct of Wright stopped. Accordingly, this court finds that the plaintiff has failed to create a genuine issue of material fact regarding the defendant's liability for Wright's actions. *See Busby*, 551 So.2d 322 (where court held that plaintiffs notifying management in general terms of the harassment without giving details and without giving the company time to correct the situation was insufficient for the company to be liable on the claim of outrage).

As such, the court finds that the plaintiff's state law claims against the defendant are due to be dismissed.

### V.  Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that the defendants' motion for summary judgment (doc. 7) is due to be granted in part and denied in part;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on plaintiff's claim of sexual harassment and her state law claims. Those claims are **DISMISSED WITH PREJUDICE**. The defendant's motion for summary judgment is **DENIED** with respect to plaintiff's claim of retaliation. That claim remains for trial on October 21, 2002, in Florence, Alabama.

**DONE** and **ORDERED** this the ___1___ day of October, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE